SHELL SEEKERS, INC., CHARLES W. CONSOLVO,
LINDA B. CONSOLVO, SNEGLE GADE ASSOCIATES,
A Limited Partnership, CHARLES W. CONCOLVO,
Trustee of the Yvette B. Lederberg Trust,
ARTHUR B. CHOATE, STEWART LOVELAND
and STACY LOVELAND, Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS, and ROY MARTIN,
Tax Assessor, Defendants

Civ. No. 2001-197

District Court for the Virgin Islands

Division of St. Thomas and St. John

March 15, 2004

DAVID E. NICHOLS, ESQ., St. Thomas, U.S.V.I., *for plaintiffs*

KERRY E. DRUE, ESQ., St. Thomas, U.S.V.I., *for defendants*

MOORE, *Judge*

## MEMORANDUM

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands*, 262 F. Supp. 2d 540, 561 (D.V.I. 2003) [*Berne Corp. II*]. Accordingly, I entered a decree in the consolidated portion of this case awarding injunctive and other such relief common to all parties. All that remains for resolution is application of this decree to the unique facts posed in this individual case brought by plaintiffs Shell Seekers, Inc., Charles W. Consolvo, Linda B. Consolvo, Snegle Gade Associates, L.P., Charles W. Consolvo, Trustee of the Yvette B. Lederberg Trust, Arthur B. Choate, Stewart Loveland, and Stacy Loveland.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

I hereby adopt and incorporate by reference each of the conclusions of law made during the trial of the consolidated tax cases in this matter, as set forth in my May 12, 2003 Memorandum Opinion. I will now set forth the specific findings of fact and conclusions of law for each property involved in this matter.

### A. Plaintiff Charles W. Consolvo, Parcel Nos. 52E-3 & 52B-2A Estate Thomas (Tax Parcel No. 1-05501-0211-00)

Until 1999, plaintiff Charles W. Consolvo leased Parcel Nos. 52E-3 and 52B-2A, Estate Thomas, on which he built a warehouse, with approximately 25% office space and 75% warehouse space, in 1992 at a cost of approximately $595,000. (Joint Tr., Vol. 3 at 104.) In 1994, Consolvo and the Tax Assessor agreed that the warehouse would be assessed at $650,000 for tax year 1993. (*Id.* at 104.) For tax year 1994, the Tax Assessor increased the warehouse's assessment from $650,000 to $839,810. Consolvo timely appealed this large increase. Consolvo has never been given a hearing before the Board of Tax Review on this

appeal. A hearing called in 1999 failed for lack of a quorum of board members. (Joint Tr., Vol. 3 at 114-18.)

Following Hurricane Marilyn, Consolvo again met with the Tax Assessor, this time to discuss the warehouse's valuation for the 1995 tax year. After Consolvo provided the Tax Assessor with evidence of damage to the building caused by Hurricane Marilyn and the insurance settlement he received for the damages, he and the Tax Assessor agreed to an assessment of $508,975 for the 1995 tax year. (*Id.* at 105 & 109.) For tax year 1996, however, the Tax Assessor assessed the warehouse at $746,147, an increase of $200,000. The Tax Assessor assessed the warehouse at $815,427 for the 1997 tax year and $805,833.00 for the 1998 tax year. Consolvo timely appealed the 1996, 1997, and 1998 assessments. Just as with his 1994 appeal, Consolvo did not receive a hearing on this appeal, as the hearing called in 1999 failed for lack of a quorum.

In 1999, Consolvo purchased the land underlying the warehouse and bought out his forty-year ground lease for a total price of $420,000. (*Id.* at 111-114.) According to an appraisal, however, the market value of the land was only $300,000. (*Id.* at 112.) The difference between what Consolvo paid and the fair market value was the premium that the owner of the property demanded to give up the valuable ground lease. Consolvo was willing to pay the premium because he had to own the underlying land in fee simple to be able to obtain bank financing. Accordingly, I agree that the purchase was not an arm's length transaction and the $420,000 that Consolvo paid for the land does not reflect its fair market price. (SS Tr. at 13-14.)

For the 1999 tax year, the Tax Assessor assessed the land and the warehouse together at $1,329,412, and at $1,318,537 for the 2000 tax year. Consolvo timely appealed these assessments to the Board of Tax Review. Just as with his other appeals, no hearing has ever been held. (Joint Tr., Vol. 3 at 114-118.)

■ At the trial of this individual case, Consolvo presented testimony and evidence that the Tax Assessor's assessments of the warehouse and the underlying property were plagued by the same problems I noted in the consolidated case. In particular, local appraiser Steve Jarmon testified that the Tax Assessor committed numerous errors with respect to the warehouse, including (1) using the same rental rate to calculate the gross income for both the warehouse space and office space, (2) using

economic life factors for the warehouse that were greater than forty years, and (3) not recognizing that the 1999 land purchase was not an arms-length transaction. (SS Tr. at 10-11, 12, 13-14.) The government, on the other hand, failed to produce credible evidence to support the values assessed by the Tax Assessor's Office. Accordingly, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

## B. Plaintiff, Snegle Gade Associates, a Limited Partnership, commercial property known as Parcel Nos. 4 (Tax Parcel No. 1-05302-3919-00), 5 (Tax Parcel No. 1-05302-3920-00), 6 (Tax Parcel No. 1-05302-3921-00), and 6A (Tax Parcel No. 1-05302-3923-00) Snegle Gade

Snegle Gade Associates, a limited partnership ["Associates"], purchased Parcel Nos. 4, 5, 6, and 6A Snegle Gade in 1987. Together, the property consists of three commercial buildings and a small yard (6A) that is integral to Parcel 4. (Joint Tr., Vol. 3 at 125-26.) Beginning in 1994, and continuing through 2000, Associates appealed their property tax assessments to the Board of Tax Appeals. Their first appeal in 1994 was prompted by a private evaluation of the property that the estimated market value of the four parcels did not exceed $390,000, whereas the Tax Assessor valued the four parcels collectively at $735,000. (*Id.* at 126-28; Ex. SS2.) As with Consolvo, Associates never received a hearing for any of its appeals. The hearing called in October 1999 failed for lack of a quorum of Board members. (Joint Tr., Vol. 3 at 128, 134-135.)

In 2000, Associates sold Parcels Nos. 4 and 6A together for $120,000. The Tax Assessor had valued Parcel No. 4 at $266,068 and Parcel No. 6A at $17,644, for a total of $283,000. (*Id.* at 129-30). As the sale was an arms-length transaction, I find that the sale price of $120,000 for the two parcels reflected their combined market value. Associates sold Parcel No. 5 in February, 2001 for $70,000. (*Id.* at 131.) For Tax Year 2000, the Tax Assessor had valued Parcel No. 5 at $174,282. Associates rejected an offer to purchase Parcel No. 6 on December 10, 2002 for $175,000, because it believed that the property was worth at least $210,000. The Tax Assessor, in contrast, assessed Parcel No. 6 at $487,017 for tax year 2000. (*Id.* at 132-34.)

At trial of this individual case, Associates demonstrated that the Tax Assessor's assessments of their property were plagued by the same

problems I noted in the consolidated case. The government, on the other hand, failed to produce credible evidence to support the values assessed by the Tax Assessor's Office. Accordingly, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

## C. Plaintiff, Charles W. Consolvo, trustee of the Yvette B. Lederberg Trust, unimproved land known as Parcel No. D-11 Estate Lovenlund (Tax Parcel No. 1-03002-0323-00)

Charles Consolvo, as trustee of the Yvette B. Lederberg Trust [the "Trustee"], purchased Parcel No. D-11 Estate Lovenlund in 1984 for $28,000.00. (Joint Tr., Vol. 3 at 142.) In 1996, after the Tax Assessor increased the assessed value of the property less than a year after Hurricane Marilyn, the Trustee began to question the accuracy of the government's assessment. At the time, he thought the value of the property was $40,000 based on the sale of another nearby parcel of land that year for $37,000 and filed appeals of the assessments for the 1996 through 2000 tax years. (*Id.* at 144, 147.) As with the other plaintiffs, no hearing has been held. (*Id.* at 147.) The Trustee sold the property to a third party in an arms-length transaction on August 30, 2001. The property sold for $45,000.00, when the Tax Assessor assessed the land at $85,657.00. (Joint Tr., Vol. 3 at 146.)

█ I find that the Trustee's proposed values for the years in question are reasonably supported by the evidence. The best indication of a property's true value is its sale on the open market in an arms length transaction. Although the Tax Assessor claimed that the sale price was too low, the government has presented no evidence to back up this claim, refute the plaintiff's argument, or convince me that the arms-length sale of the property for $45,000.00 did not reflect its true value. (SS Tr. at 93.) Accordingly, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

## D. Plaintiffs, Charles W. Consolvo and Linda B. Consolvo, residential property Parcel No. 3S Agnes Fancy (Tax Parcel No. 1-02804-0280-00)

Parcel No. 3S Agnes Fancy is the personal residence of the Consolvos, who purchased the land in 1986 for $26,000 and built a house on it in 1988 at a cost of approximately $180,000. (Joint Tr., Vol. 3 at 152.) The Tax Assessor increased his assessment of the residence 40% from tax

year 1995 to tax year 1996. The Consolvos filed timely appeals of the Tax Assessor's assessments to the Board of Tax Appeals for tax years 1997 through 2001. (SS Tr. at 89-92; Joint Tr., Vol. 3 at 153.) As always, the Consolvos never received a hearing from the Board of Tax Appeals on any of their appeals. (*Id.* at 154-55.)

■ At trial of this individual case, Consolvo demonstrated that the Tax Assessor's assessments of the property were plagued by the same problems I noted in the consolidated case. For example, the Tax Assessor's assessment increased 40% from 1995 to 1996, even though the Consolvos had not made any improvements to the house; it was not damaged by hurricane Marilyn in 1995. (SS Tr. at 50, 91.) The government, on the other hand, failed to produce evidence to support the values assessed by the Tax Assessor's office. For example, when questioned on cross-examination regarding the 40% increase in the property's evaluation between 1995 and 1996, the Tax Assessor failed to produce any explanation, beyond mere conjecture, for the dramatic increase. (*Id.* at 90-91.) In fact, the Tax Assessor admitted that his office violated Virgin Islands law for two consecutive years by increasing the valuation of Consolvo's residence by more than 10% because the Tax Assessor's office had no evidence to support such an increase. (*Id.* at 91-92.) Accordingly, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

### E. Plaintiffs Stewart Loveland and Stacy Loveland, residential property Parcel Nos. 1-10 and 1-28 St. Joseph and Rosendahl (Tax Parcel No. 1-02904-0149-00)

Stewart and Stacy Loveland purchased Parcel Nos. 1-10 and 1-28 St. Joseph and Rosendahl in 1996 in an arms-length transaction for a purchase price of $175,000. (Joint Tr., Vol. 3 at 156.) Hurricane Marilyn partially destroyed the residence in 1995 and the Lovelands spent $70,000 in repairs on the house to make it livable, raising the total amount they invested to $245,000. (*Id.* at 156-57.) For tax year 1997, however, the Tax Assessor assessed the property at $403,721. (*Id.* at 157.) The Lovelands timely filed appeals of the Tax Assessor's evaluations for tax years 1997 through 2001. (Exhibit SS11.) They also have never received a hearing from the Board of Tax Appeals on their appeals and have never received a tax refund, tax credit, adjusted tax bill or adequate relief of any kind. (Joint Tr., Vol. 3 at 158.)

567

■ The evidence in the record that the Tax Assessor increased the value of the property to $403,721 less than a year after the Lovelands purchased the property for $175,000 and spen[t] only $70,000 to repair the hurricane damages demonstrates that the government's post-repair valuation was invalid. At the trial on this individual case, the government provided no evidence to convince me that its $403,721 valuation, or any of the subsequent valuations, were accurate. Accordingly, I will exercise my authority to vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

### F. Plaintiffs Shell Seekers, condominium unit B, Rainbow Building, Anchorage Condominiums (Tax Parcel No. 1-07803-0336-06)

Shell Seekers, Inc. owns a two-bedroom condominium, Unit B, Rainbow Building, Anchorage Condominiums. The condo was slightly damaged and the common areas were severely damaged by Hurricane Marilyn in 1995. (Joint Tr., Vol. 3 at 159.) Shell Seekers began appealing the Tax Assessor's valuation of this property after he refused to take into account the hurricane damage to the common areas. (*Id.* at 159.) Shell Seekers timely filed appeals of the assessment with the Board of Tax Appeals for tax years 1995 through 2001. (*Id.* at 166; Ex. SS11.)

Like all the other plaintiffs, Shell Seekers never received a hearing from the Board of Tax Appeals (Joint Tr., Vol. 3 at 166), although it did receive an undated, written "decision" from the Board, which, if implemented, would have increased the assessment much above the Tax Assessor's original value. (Ex. SS13.) I discount this writing purporting to be a decision of the Board of Tax Appeals. The Chairperson of the Board testified that, in her experience, the Board has never increased an assessment on appeal and that such a result would not be fair to the taxpayer. (Testimony of Bernice Turnbull, Joint Tr., Vol. 4 at 194-99.)

■ At trial of this individual case, Shell Seekers demonstrated that the Tax Assessor's assessments of its property were plagued by the same problems I noted in the consolidated case. Moreover, the government failed to produce evidence to support the values assessed by the Tax Assessor's office. For example, although the Tax Assessor repeatedly testified throughout the trial that condos are valued based upon comparable sales and not replacement costs, he was unable to produce any documents or exhibits which would show that any comparable sales were, in fact, considered. (SS Tr. at 79, 83-88.) Further, the Tax Assessor

568

admitted on cross-examination that the entry "RCN" (i.e. Replacement Cost New) on his computer printouts was identical to the assessed improvement appearing on the corresponding tax bill. (SS Tr. at 80-83.) Finding the government's explanation unsatisfactory, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c)).

## G. Plaintiff Arthur B. Choate, condominium unit No. 109, Intrepid Building, Anchorage Condominiums (Tax Parcel No. 1-07803-0336-32)

Arthur B. Choate purchased condominium unit No. 109, Intrepid Building, Anchorage Condominiums in 1982 for $154,000. (Joint Tr., Vol. 3 at 168.) The condominium apartment was slightly damaged and the common areas were severely damage[d] by Hurricane Marilyn in 1995. (*Id.* at 169.) The Tax Assessor refused to take this damage into account in assessing the property, prompting the plaintiff to timely appeal the assessments for tax years 1995 through 2001. (*Id.* at 169, 173; Exhibit SS11.)

Like all the other plaintiffs, Choate never received a hearing from the Board of Tax Appeals (Joint Tr., Vol. 3 at 173), although he did receive an undated, written "decision" from the Board, which, if implemented, would have increased the assessment much above the Tax Assessor's original assessment. (Ex. SS13.) I discount this writing purporting to be a decision of the Board of Tax Appeals. The Chairperson of the Board testified that, in her experience, the Board has never increased an assessment on appeal and that such a result would not be fair to the taxpayer. (Testimony of Bernice Turnbull, Joint Tr., Vol. 4 at 194-99.)

At trial of this individual case, Choate demonstrated that the Tax Assessor's assessments of his property were plagued by the same problems I noted in the consolidated case. For example, although the Tax Assessor repeatedly testified throughout the trial that condominiums are valued based upon comparable sales and not replacement costs, he was unable to produce any documents or exhibits which would show that any comparable sales were, in fact, considered. (SS Tr. at 79, 83-88.) Further, the Tax Assessor admitted on cross-examination that the entry "RCN" (i.e. Replacement Cost New) on his computer printouts was identical to the assessed improvement appearing on the corresponding tax bill. (SS Tr. at 80-83.) The government failed to present evidence that reasonably supported its valuation of the plaintiff's property. Accordingly, I will

vacate the respective tax assessment for this property. *See* 33 V.I.C. § 2453(c)).

## H. Plaintiff Linda B. Consolvo, condominium unit No. 301, St. Kitts, Sapphire Hill Condominiums (Tax Parcel No. 1-05804-0336-20)

Linda Consolvo purchased condominium unit 301 St. Kitts, Sapphire Hill Condominiums in 1978 for $27,075. The condominium was slightly damaged and the common areas were severely damaged by Hurricane Marilyn in 1995. (Joint Tr., Vol. 3 at 176.) Despite this damage, the Tax Assessor did not reduce his assessment of the property. (*Id.*) The value of the property decreased again in the late 1990s as the condominium complex was subject to litigation which will result in a substantial cost to each owner to make structural repairs. (*Id.* at 177.) These structural problems and the litigation were also not taken into account in the Tax Assessor's assessments.

The plaintiff timely filed appeals of the assessments to the Board of Tax Appeals for tax years 1995 through 2001. (Exhibit SS11.) Like all the other plaintiffs, Consolvo never received a valid hearing from the Board of Tax Appeals (Joint Tr., Vol. 3 at 179), although she did receive an undated, written "decision" from the Board, which, if implemented, would have increased the assessment much above the Tax Assessor's original assessment. (Ex. SS13.) I discount this writing purporting to be a decision of the Board of Tax Appeals. The Chairperson of the Board testified that, in her experience, the Board has never increased an assessment on appeal and that such a result would not be fair to the taxpayer. (Testimony of Bernice Turnbull, Joint Tr., Vol. 4 at 194-99.)

At trial of this individual case, the plaintiff demonstrated that the Tax Assessor's assessments of her property were plagued by the same problems I noted in the consolidated case. The plaintiff discredited the Tax Assessor's valuations by presenting evidence of (1) comparable sales supporting a lower valuation, (2) evidence of the hurricane damage to the common areas, (3) evidence of the litigation that will result in a significant assessment to each condo owner. The government, on the other hand, failed to present evidence or testimony that reasonably supported its valuation of the plaintiff's property. Accordingly, I will vacate the respective tax assessment for this property. *See* 33 V.I.C. § 2453(c).

### I. Plaintiffs Stewart Loveland and Stacy Loveland, condominium unit 288 St. Kitts, Sapphire Hill Condominiums (Parcel No. 1-05804-0336-08)

Condominium unit 288 St. Kitts, Sapphire Hill Condominiums is a studio condominium located in the same building as the previously discussed property. This condominium was also slightly damaged and the common areas severely damaged by Hurricane Marilyn in 1995. (Joint Tr., Vol. 3 at 176.) Despite this damage, the Tax Assessor did not reduce his assessment of the property. (*Id.*) The value of the property decreased again in the late 1990s as the condominium complex was subject to litigation which will result in a substantial assessment to each owner for structural repairs which the Tax Assessor did not take into account in his assessments. The Lovelands filed timely appeals of the assessments for tax years 1995 through 2001. (Exhibit SS13.) The plaintiffs never received a hearing from the Board of Tax Appeals. (Joint Tr., Vol. 3 at 179.)

■ At trial of this individual case, the Lovelands demonstrated that the Tax Assessor's assessments of their property were plagued by the same problems I noted in the consolidated case. The plaintiffs discredited the Tax Assessor's assessments by presenting evidence of (1) comparable sales supporting a lower valuation, (2) evidence of the hurricane damage to the common areas, (3) evidence of the litigation that which will result in a significant assessment to each condo owner. The government, on the other hand, failed to present evidence or testimony that reasonably supported its assessment of the plaintiff's property. Accordingly, I will vacate the respective tax assessments for this property. *See* 33 V.I.C. § 2453(c).

### III. REMEDIES

#### A. General Remedy Framework

Having reviewed the testimony and evidence presented by the plaintiffs in this individual case, and noting the inability of the government to produce any evidence to support its assessments, I find the plaintiffs' values to be credible and the government's values to be overinflated and not credible. Accordingly, as per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by the plaintiffs for any tax

bills before 1999 are the actual values for those tax years. To the extent that any plaintiff has overpaid property taxes for those years, she is entitled to a refund for the overpaid amount plus interest at the statutory .rate of twelve percent from the date each tax bill was paid.

For the 1999 tax bills and beyond, I will accept the plaintiffs' proffered values as good faith estimates of their tax obligations and order the government to treat these values as the assessed values until the Special Master has certified the. Territory's assessment system to be capable of assessing properties at their actual value. To the extent that any plaintiff in this matter has already paid tax bills from 1999 or later, he is entitled to a credit of the paid amount plus interest at the statutory rate of twelve percent from the date each tax bill was paid. The government may not apply this credit to any future property tax obligation without the tax payer's consent. The government may, however, choose to refund this credit and interest to any such paying party.

Below are tables for each tax parcel discussed in this memorandum. The tables set forth the assessed values and tax liabilities. The tables also contain the plaintiffs' own appraised values and proposed tax liability which I accept as the actual values for any appealed tax assessments before 1999 and as good faith estimates for the 1999 tax year and beyond.

## B. Plaintiff Charles W. Consolvo, Parcel Nos. 52E-3 & 52B-2A Estate Thomas (Tax Parcel No. 1-05501-0211-00)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $839,810.00 | $633,000.00 | $7,217.78 | $4,747.50 | $2,470.28 |
| 1995 | $508,975.00 | $508,975.00 | $3,817.31 | $3,817.31 | $0.00 |
| 1996 | $746,147.00 | $616,000.00 | $5,726.89 | $4,620.00 | $1,106.89 |
| 1997 | $815,427.00 | $599,000.00 | $6,115.70 | $4,492.50 | $1,623.20 |
| 1998 | $805,833.00 | $582,000.00 | $6,043.75 | $4,365.00 | $1,678.75 |
| | | | | Total | $6,879.12 |
| 1999 | $1,329,412 | $900,000.00 | $6,043.75 | $6,750.00 | -$706.25 |
| 2000 | $1,318,537 | $900,000.00 | $5,250.00 | $6,750.00 | -$1,500.00 |
| | | | | Total | -$2,206.25 |

As shown by the above table, plaintiff Charles W. Consolvo may have underpaid his 1999 and 2000 property taxes. In as much as plaintiffs have prevailed in their overall contention that the tax assessment system is broken, the government will have to wait until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value before it can be determined whether Consolvo has indeed underpaid for these two tax years. Only then will the Tax Assessor be able to reassess the property for these two tax years at its actual value.

## C. Plaintiff, Snegle Gade Associates, a Limited Partnership, commercial property known as Parcel No. 4 Snegle Gade (Tax Parcel No. 1-05302-3919-00)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $218,767.00 | $115,000.00 | $1,868.25 | $862.50 | $755.75 |
| 1995 | $175,850.00 | $101,300.00 | $1,568.88 | $759.75 | $559.13 |
| 1996 | $228,112.00 | $105,000.00 | $1,960.84 | $787.50 | $923.34 |
| 1997 | $245,227.00 | $115,000.00 | $2,089.20 | $862.50 | $976.70 |
| 1998 | $242,418.00 | $110,000.00 | $2,068.14 | $825.00 | $993.14 |
| | | | | Total: | $4,208.06 |
| 1999 | $269,231.00 | $110,000.00 | $2,269.23 | $825.00 | $1,194.23 |
| | | | | Total: | $1,194.23 |

## D. Plaintiff, Snegle Gade Associates, a Limited Partnership, commercial property known as Parcel No. 5 Snegle Gade (Tax Parcel No. 1-05302-3920-00)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $143,750.00 | $80,000.00 | $1,228.13 | $600.00 | $478.13 |
| 1995 | $126,147.00 | $75,500.00 | $1,096.10 | $566.25 | $379.85 |
| 1996 | $160,323.00 | $77,000.00 | $1,352.43 | $427.50 | $774.93 |
| 1997 | $162,062.00 | $80,000.00 | $1,365.46 | $600.00 | $615.46 |
| 1998 | $160,275.00 | $75,000.00 | $1,352.06 | $562.50 | $639.56 |
| | | | | Total: | $2887.93 |
| 1999 | $174,282.00 | $75,000.00 | $1,457.12 | $562.50 | $744.62 |
| | | | | Total: | $744.62 |

### E. Plaintiff, Snegle Gade Associates, a Limited Partnership, commercial property known as Parcel No. 6 Snegle Gade (Tax Parcel No. 1-05302-3921-00)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $363,506.00 | $225,000.00 | $2,628.90 | $1,687.50 | $841.40 |
| 1995 | $321,136.00 | $223,000.00 | $2,508.53 | $1,672.50 | $736.03 |
| 1996 | $357,055.00 | $220,000.00 | $2,777.91 | $1,650.00 | $1,027.91 |
| 1997 | $455,592.00 | $225,000.00 | $3,438.55 | $1,687.50 | $1,651.05 |
| 1998 | $467,045.00 | $215,000.00 | $3,399.36 | $1,650.00 | $1,649.36 |
| | | | | Total: | $5,905.75 |
| 1999 | $492,964.00 | $210,000.00 | $3,797.23 | $1,612.50 | $2,084.73 |
| 2000 | $487,017.00 | $205,000.00 | $2,628.90 | $1,575.00 | $953.90 |
| | | | | Total: | $3,038.63 |

### F. Plaintiff, Snegle Gade Associates, a Limited Partnership, commercial property known as Parcel No. 6A Snegle Gade (Tax Parcel No. 1-05302-3923-00)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $11,600.00 | $15,000.00 | $87.01 | $112.50 | -$25.49 |
| 1995 | $10,635.00 | $12,000.00 | $79.76 | $90.00 | -$10.24 |
| 1996 | $11,600.00 | $10,000.00 | $87.01 | $75.00 | $12.01 |
| 1997 | $16,448.00 | $10,000.00 | $95.71 | $75.00 | $20.71 |
| 1998 | $16,448.00 | $10,000.00 | $95.71 | $75.00 | $20.71 |
| | | | | Total: | $17.70 |
| 1999 | $14,044.00 | $10,000.00 | $105.33 | $75.00 | $30.33 |
| | | | | Total: | $30.33 |

**G. Plaintiff, Charles W. Consolvo, trustee of the Yvette B. Lederberg Trust, unimproved land known as Parcel No. D-11 Estate Lovenlund (Tax Parcel No. 1-03002-0323-00)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1996 | $70,760.00 | $40,000.00 | $530.70 | $300.00 | $230.70 |
| 1997 | $77,837.00 | $40,000.00 | $583.77 | $300.00 | $283.77 |
| 1998 | 477,837.00 | $42,000.00 | $583.77 | $315.00 | $268.77 |
| | | | | Total: | $768.77 |
| 1999 | $85,657.00 | $43,000.00 | $642.43 | $322.50 | $319.93 |
| 2000 | $85,657.00 | $44,000.00 | $642.43 | $330.00 | $312.43 |
| | | | | Total: | $632.36 |

**H. Plaintiffs, Charles W. Consolvo and Linda B. Consolvo, residential property Parcel No. 3S Agnes Fancy (Tax Parcel No. 1-02804-0280-00)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1997 | $308,495.00 | $220,000.00 | $1,751.21 | $1,087.50 | $663.71 |
| 1998 | $303,015.00 | $240,000.00 | $1,960.11 | $1,487.50 | $472.61 |
| | | | | Total: | $1,136.32 |
| 1999 | $330,154.00 | $260,000.00 | $1,960.11 | $1,637.50 | $322.61 |
| 2000 | $324,105.00 | $280,000.00 | $2,118.29 | $1,787.50 | $330.79 |
| 2001 | $321,081.00 | $295,000.00 | $2,095.61 | $1,900.00 | $195.61 |
| | | | | Total: | $849.01 |

575

**I. Plaintiffs Stewart Loveland and Stacy Loveland, residential property Parcel Nos. 1-10 and 1-28 St. Joseph and Rosendahl (Tax Parcel No. 1-02904-0149-00)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1997 | $403,721.00 | $245,000.00 | $2,049.32 | $858.91 | $1,190.41 |
| 1998 | $401,378.00 | 4245,000.00 | $2,760.34 | $1,587.50 | $1,172.84 |
| | | | | Total: | $2,363.25 |
| 1999 | $425,525.00 | $245,000.00 | $2,941.44 | $1,587.50 | $1,353.94 |
| 2000 | $360,334.00 | $250,000.00 | $2,452.51 | $1,625.00 | $827.51 |
| 2001 | $360,334.00 | $260,000.00 | $2,452.51 | $1,700.00 | $752.51 |
| | | | | Total: | $2,933.96 |

**J. Plaintiffs Shell Seekers, condominium unit B, Rainbow Building, Anchorage Condominiums (Tax Parcel No. 1-07803-0336-06)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $169,639.00 | $121,000.00 | $1,272.99 | $907.50 | $364.79 |
| 1996 | $177,719.00 | $140,000.00 | $1,288.90 | $1,050.00 | $238.90 |
| 1997 | $178,907.00 | $140,000.00 | $1,341.80 | $1,050.00 | $291.80 |
| 1998 | $177,762.00 | $135,000.00 | $1,333.21 | $1,012.50 | $320.71 |
| | | | | Total: | $1,216.20 |
| 1999 | $173,565.00 | $140,000.00 | $1,301.74 | $1,050.00 | $251.74 |
| 2000 | $172,463.00 | $145,000.00 | $1,293.47 | $1,087.50 | $205.97 |
| 2001 | $172,463.00 | $150,000.00 | $1,293.47 | $1,125.00 | $168.47 |
| | | | | Total: | $626.18 |

**K. Plaintiff Arthur B. Choate, condominium unit No. 109, Intrepid Building, Anchorage Condominiums (Tax Parcel No. 1-07803-0336-32)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $179,616.00 | $131,000.00 | $1,324.63 | $982.50 | $342.13 |
| 1996 | $185,028.00 | $162,000.00 | $1,387.71 | $1,215.00 | $172.71 |
| 1997 | $186,266.00 | $162,000.00 | $1,397.00 | $1,215.00 | $182.00 |
| 1998 | $185,073.00 | $162,000.00 | $1,388.05 | $1,215.00 | $173.05 |
| | | | | Total: | $869.89 |
| 1999 | $180,705.00 | $140,000.00 | $1,355.29 | $1,050.00 | $305.29 |
| 2000 | $179,558.00 | $150,000.00 | $1,346.69 | $1,125.00 | $221.69 |
| 2001 | $179,558.00 | $155,000.00 | $1,346.69 | $1,162.50 | $184.19 |
| | | | | Total: | $711.17 |

**L. Plaintiff Linda B. Consolvo, condominium unit No. 301, St. Kitts, Sapphire Hill Condominiums (Tax Parcel No. 1-05804-0336-20)**

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $62,237.00 | $33,000.00 | $468.80 | $247.50 | $221.30 |
| 1996 | $63,743.00 | $54,000.00 | $478.08 | $405.00 | $73.08 |
| 1997 | $61,008.00 | $50,000.00 | $457.56 | $375.00 | $82.56 |
| 1998 | $60,612.00 | $50,000.00 | $454.59 | $375.00 | $79.59 |
| | | | | Total: | $456.53 |
| 1999 | $58,869.00 | $50,000.00 | $441.52 | $375.00 | $66.52 |
| 2000 | $58,487.00 | $35,000.00 | $438.65 | $262.50 | $176.15 |
| 2001 | $58,106.00 | $33,000.00 | $435.80 | $247.50 | $188.30 |
| | | | | Total: | $430.97 |

## M. Plaintiffs Stewart Loveland and Stacy Loveland, condominium unit 288 St. Kitts, Sapphire Hill Condominiums (Parcel No. 1-05804-0336-08)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $73,810.00 | $35,000.00 | $553.59 | $262.50 | $291.09 |
| 1995 | $73,810.00 | $58,000.00 | $546.74 | $435.00 | $111.74 |
| 1996 | $72,898.00 | $60,000.00 | $543.60 | $450.00 | $93.60 |
| 1997 | $72,480.00 | $62,000.00 | $540.14 | $465.00 | $75.14 |
| 1998 | $72,019.00 | $52,000.00 | $527.44 | $390.00 | $137.44 |
| | | | | Total: | $709.01 |
| 1999 | $70,325.00 | $37,000.00 | $525.10 | $277.50 | $246.60 |
| 2000 | $69,880.00 | $35,000.00 | $524.10 | $262.50 | $261.60 |
| | | | | Total: | $508.20 |